# UNITED STATES DISTRICT COURT

for the

Northern District of Illinois – Eastern Division

| | | |
|---|---|---|
| JEDEDIAH BROWN, *Plaintiffs,* | ) ) ) ) | |
| **-v-** | ) ) ) | Case No._____ |
| AMIR A. H. SHAKUR, *Defendant.* | ) ) ) | **COMPLAINT AND JURY DEMAND** |

**CIVIL ACTION**

*This action alleges, inter alia, a sustained campaign of defamation, false light, intentional infliction of emotional distress, harassment, and tortious interference carried out by Defendant through repeated publications of knowingly false and inflammatory statements across social media platforms, livestream broadcasts, public meetings, and written communications. Plaintiff seeks redress for the reputational, emotional, and professional harm caused by Defendant's deliberate and malicious conduct, as well as injunctive relief to prevent further defamatory and harassing behavior.*

Plaintiff JEDEDIAH BROWN, by and through his attorneys, LLG National Law Group, and by way of Complaint, brings this action for damages and other equitable relief against Defendant, AMIR A. H. SHAKUR, alleging as follows:

**INTRODUCTION**

1. This action arises from Defendant's year-long, coordinated, and malicious campaign to destroy Plaintiff's reputation through the repeated publication of knowingly false, inflammatory, and defamatory statements across social media platforms, YouTube broadcasts, public meetings, and written communications. Defendant's conduct was not accidental, isolated, or negligent but was intentional, sustained, and calculated to inflict maximum reputational and emotional harm on Plaintiff.

1

2.      Throughout this campaign, Defendant published dozens of false statements accusing Plaintiff of serious criminal offenses, including murder, aggravated assault, mob action, and predatory behavior; falsely asserting that Plaintiff suffers from mental illness, is "mentally disturbed," or is a danger to the community; and fabricating allegations of sexual misconduct, terrorism, fraud, and other acts of moral turpitude. Defendant made these statements without any factual basis, with actual malice, and with the deliberate intent to damage Plaintiff's standing in the community, interfere with his professional activities, and incite hostility against him.

3.      Defendant's statements constitute defamation per se under Illinois law because they falsely accuse Plaintiff of criminal conduct, sexual wrongdoing, professional dishonesty, and mental instability; categories that are inherently defamatory and presumed to cause harm. Defendant's conduct also placed Plaintiff in a false light, caused severe emotional distress, and interfered with Plaintiff's community work, advocacy efforts, and professional opportunities.

4.      As a direct and foreseeable result of Defendant's actions, Plaintiff has suffered significant reputational injury, emotional distress, loss of professional and community opportunities, and ongoing harm that continues to this day. Plaintiff brings this action to hold Defendant accountable for his malicious conduct, to obtain compensatory and punitive damages, and to secure injunctive relief preventing further defamatory and harassing behavior.

## JURISDICTION AND VENUE

5.      This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a) because complete diversity exists between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff is a citizen of Texas, Defendant is a citizen of Illinois, and the damages arising from Defendant's extensive defamatory campaign, including reputational injury, emotional distress, interference with professional opportunities, and punitive damages, easily exceed the jurisdictional threshold.

6.      This Court has personal jurisdiction over Defendant because he resides in Illinois and purposefully directed his conduct toward this forum. Defendant published the defamatory statements from Illinois, targeted them at Illinois audiences, and caused substantial harm within Illinois, satisfying both the Illinois long-arm statute and the constitutional "minimum contacts" requirement. Defendant's conduct was expressly aimed at this forum, and the brunt of the harm occurred here.

7.      Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b) because Defendant resides in this District and a substantial part of the events, publications, and injuries giving rise to these claims occurred here. Defendant's defamatory statements were created, uploaded, and disseminated from within this District, and their effects were felt here.

## PARTIES

8.      At all times relevant hereto, Plaintiff JEDEDIAH BROWN is, upon information and belief, an adult resident citizen of the County of Dallas, State of Texas, with a residential address believed to be 3000 Bardin Road, Grapevine, Texas 75052, USA.

9.      At all times relevant hereto, Defendant AMIR A. H. SHAKUR is, upon information and belief, an adult resident and citizen of the State of Illinois, residing in Cook County, with an employment address for service of process believed to be 14341B Bensley Avenue, Chicago, Illinois 60633, USA, which he identified as his residence in prior state-court proceedings.

10.     The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged herein are currently unknown to Plaintiff. Plaintiff will seek leave from the court to amend this complaint to reflect the true names and capacities of such other responsible parties when their identities become known.

## FACTUAL BACKGROUND

17.     Plaintiff hereby repeats all of the allegations contained in the Complaint thus far

above and incorporates the same as if fully set forth at length herein.

18.     Plaintiff is a public-facing community advocate whose work depends heavily on his reputation, credibility, and relationships within the communities he serves. His professional and civic activities require public trust, collaboration with community partners, and the ability to engage constructively in public forums.

19.     Defendant Amir A.H. Shakur is, upon information and belief, an adult resident and citizen of the State of Illinois, residing in Cook County, with a last-known address of 14341B Bensley Avenue, Chicago, Illinois 60633, as listed in his state-court filings.

20.     Beginning in approximately October 2024, Defendant initiated a sustained and escalating campaign to damage Plaintiff's reputation. Defendant used social media platforms, YouTube broadcasts, public meetings, and written communications to publish a series of statements about Plaintiff that were not only false but also inflammatory, sensationalized, and designed to provoke public outrage.

21.     Defendant's conduct was not isolated or impulsive. It formed a deliberate pattern of behavior aimed at undermining Plaintiff's standing in the community and inflicting reputational and emotional harm. Defendant repeatedly returned to the same themes, republishing prior statements and creating new defamatory content as part of an ongoing effort to target Plaintiff.

22.     Throughout this period, Defendant accused Plaintiff of serious criminal conduct, including murder, aggravated assault, mob action, battery, and participation in "criminal organizations." Defendant also asserted that Plaintiff was involved in terrorism or extremist activity, portraying him as a dangerous individual who posed a threat to the public. None of these accusations had any factual basis.

23.     Defendant's attacks extended beyond fabricated criminal allegations. He also

4

published statements accusing Plaintiff of sexual misconduct and predatory behavior, again without any evidence. These statements were crafted to suggest that Plaintiff was morally unfit, unsafe, and untrustworthy, and they were disseminated in ways calculated to maximize public exposure and humiliation.

24. In addition to these accusations, Defendant repeatedly asserted that Plaintiff suffered from mental illness, was "mentally disturbed," or had attempted suicide for attention. Defendant used these false claims to portray Plaintiff as unstable, dangerous, and incapable of functioning in public life. These statements were not expressions of concern; they were part of Defendant's broader effort to discredit Plaintiff and isolate him from the community.

25. Defendant published these statements across multiple platforms, including Facebook, YouTube, TikTok, and various community forums. He also made similar statements during public meetings and in written communications that he circulated to others. Defendant's broadcasts and posts reached thousands of viewers, and he encouraged his audience to share the content widely.

26. In furtherance of this campaign, Defendant published a series of increasingly hostile and defamatory posts across Facebook and other platforms in which he referred to Plaintiff as "mentally disturbed," a "criminal offender," "Satan's spawn," and a "piece of trash," and falsely accused Plaintiff of engaging in "mob action," harassment, and even "past allegations of rape."

27. Defendant presented these statements as factual assertions rather than expressions of opinion, satire, or rhetorical hyperbole. Defendant used declarative language, referenced alleged court proceedings, invoked purported "evidence," and framed his accusations as verifiable facts. Defendant's tone, structure, and repeated insistence that Plaintiff had committed specific crimes and acts of misconduct would lead a reasonable viewer to understand these

5

statements as factual claims, not protected opinion.

28. Defendant also circulated Plaintiff's photographs alongside statements asserting that Plaintiff "needs psychological help," is dangerous to women, children, and elders, and is a threat to the community.

29. Defendant publicly mocked Plaintiff's legal proceedings, announced Plaintiff's alleged court dates, encouraged others to "shut him down," and urged the public to take action against Plaintiff. These posts were widely disseminated, tagged with hashtags designed to increase visibility, and crafted to incite hostility, humiliation, and fear. Defendant's repeated use of religiously-coded threats, such as claiming God was "orchestrating [Plaintiff's] destruction" and that Plaintiff would soon have "one foot in court and one foot in jail," further demonstrates the malicious and retaliatory nature of his conduct.

30. Defendant's campaign also included posts in which he mocked Plaintiff's legal representation and encouraged others to attend or pressure Plaintiff during legal proceedings. In several posts, Defendant referred to Plaintiff as "stupid," "trash," and "brainless," and claimed Plaintiff needed a "real attorney" or a public defender.

31. Defendant also published statements accusing Plaintiff of "mob action" and other criminal conduct, despite having no factual basis for any such claims. In additional posts, Defendant displayed firearms and wrote that "next time won't be the next time," implying that he would not exercise restraint in future encounters.

32. Defendant further asserted that Plaintiff was dangerous to women, children, and elders, and used Plaintiff's photographs in posts designed to humiliate and intimidate him. These statements and images were widely disseminated and formed part of Defendant's ongoing effort to damage Plaintiff's reputation, interfere with his legal rights, and instill fear.

33. Defendant's statements foreseeably caused and did cause members of the public

6

to question Plaintiff's integrity, safety, and fitness for community involvement. Several individuals responded to Defendant's posts by expressing fear, hostility, or distrust toward Plaintiff, and others echoed Defendant's accusations or encouraged additional complaints and legal actions against Plaintiff. Defendant's publications directly contributed to the erosion of Plaintiff's community relationships and professional opportunities.

34. Defendant also urged others to take action against Plaintiff. He encouraged viewers to file complaints, seek protective orders, contact government agencies, and attempt to have Plaintiff banned from public meetings and community events. Defendant openly announced his intention to "shut [Plaintiff] down," "ban him," and pursue criminal charges, despite having no factual basis for any such claims.

35. Defendant also used his livestream broadcasts to encourage and amplify third-party harassment of Plaintiff. During one such broadcast, Defendant displayed and highlighted comments urging viewers to "lay a complaint on him" and to "keep him tied up in court," thereby endorsing and promoting efforts to burden Plaintiff with frivolous complaints and legal entanglements.

36. Defendant provided his email address and platform branding during these broadcasts, further signaling his approval of such actions and inviting continued targeting of Plaintiff. Defendant's decision to feature and elevate these comments demonstrates his intent to incite others to act against Plaintiff, interfere with Plaintiff's legal rights, and escalate the campaign of harassment.

37. Defendant's conduct was intentional and malicious. He knew the statements he was making were false, or he acted with reckless disregard for their truth or falsity. He made no effort to verify any of the allegations he published, and he ignored information that contradicted his claims. Instead, he continued to escalate his attacks, republishing defamatory statements and

creating new ones as part of an ongoing campaign to harm Plaintiff.

38.     Defendant's pattern of conduct demonstrates actual malice. Rather than retract or correct his statements when confronted with their falsity, Defendant escalated his attacks, increased the frequency of his publications, and incorporated new defamatory themes. Defendant's decision to republish prior statements, highlight third-party attacks, and introduce threats and weapon-related imagery further evidences his intent to harm Plaintiff's reputation and emotional well-being.

39.     As a direct result of Defendant's actions, Plaintiff suffered significant reputational harm, emotional distress, and interference with his professional and community activities. Defendant's statements caused members of the public to question Plaintiff's integrity, safety, and fitness for community involvement. Plaintiff experienced humiliation, anxiety, and fear of further attacks, and he lost opportunities for collaboration and engagement within the community.

40.     Defendant's defamatory campaign is ongoing, and Plaintiff continues to suffer harm as Defendant persists in publishing new false statements and republishing prior defamatory content.

**COUNT I**
**DEFAMATION (INCLUDING DEFAMATION PER SE)**

41.     Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

42.     Defendant published numerous statements of fact about Plaintiff across social media platforms, YouTube broadcasts, public meetings, and written communications. These statements were presented as factual assertions, not opinions, commentary, or rhetorical hyperbole. Defendant intended that his audience understand these statements as literal descriptions of Plaintiff's conduct, character, and mental state.

43.     The statements Defendant published about Plaintiff were false. Plaintiff has never

engaged in the criminal conduct, sexual misconduct, predatory behavior, mental instability, or other wrongdoing that Defendant repeatedly attributed to him. Defendant had no factual basis for any of the allegations he made and fabricated or embellished claims to create the appearance of scandal and danger.

44.     Defendant published these false statements to large audiences, including thousands of viewers on Facebook, YouTube, TikTok, and other online platforms. Defendant also repeated these statements in public meetings and circulated them through written communications. Each publication was made intentionally and without privilege.

45.     Defendant acted with actual malice. He knew the statements he made were false, or he acted with reckless disregard for their truth or falsity. Defendant made no effort to verify any of the allegations he published, ignored information contradicting his claims, and continued to republish defamatory content even after being informed that his statements were false.

46.     Many of Defendant's statements constitute defamation per se under Illinois law because they falsely accuse Plaintiff of committing serious crimes, engaging in sexual misconduct, suffering from mental illness, and being professionally dishonest or morally unfit. These categories of statements are inherently defamatory, and damages are presumed.

47.     Defendant's statements also defamed Plaintiff *per quod* by causing actual harm to Plaintiff's reputation, emotional well-being, and professional opportunities. Members of the public who viewed Defendant's statements questioned Plaintiff's integrity, safety, and fitness for community involvement. Plaintiff experienced humiliation, anxiety, and loss of community and professional relationships as a direct result of Defendant's conduct.

48.     Defendant's defamatory campaign was continuous and escalating. He republished prior statements, created new defamatory content, and encouraged others to spread the false allegations. Defendant's conduct was designed to maximize reputational harm and to incite

9

hostility against Plaintiff.

49.     Defendant's defamatory conduct also included publishing and broadcasting statements accusing Plaintiff of "mob action," harassment, and "past allegations of rape," as well as referring to Plaintiff as "mentally disturbed," "Satan's spawn," and a "criminal offender." Defendant further displayed Plaintiff's photographs alongside statements asserting that Plaintiff was dangerous to women, children, and elders. These statements were presented as factual assertions, widely disseminated, and constitute defamation per se because they falsely impute criminal conduct, sexual misconduct, mental instability, and moral depravity to Plaintiff.

50.     Defendant's statements were assertions of fact, not opinion, because they accused Plaintiff of specific criminal acts, referenced alleged court proceedings, and were presented as verifiable claims rather than rhetorical hyperbole. Defendant's publications would lead a reasonable viewer to understand the statements as factual allegations capable of being proven true or false.

51.     As a direct and proximate result of Defendant's defamatory statements, Plaintiff suffered significant reputational injury, emotional distress, and interference with his professional and community activities. Plaintiff continues to suffer harm as Defendant persists in publishing new false statements and republishing prior defamatory content.

52.     Plaintiff is entitled to compensatory damages, presumed damages for defamation per se, and punitive damages due to Defendant's malicious and reckless conduct.

**COUNT II**
**FALSE LIGHT INVASION OF PRIVACY**

53.     Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

54.     Defendant publicly portrayed Plaintiff in a manner that placed him in a false light before the community. Through repeated online broadcasts, social media posts, public statements,

10

and written communications, Defendant disseminated a narrative depicting Plaintiff as a criminal, predator, fraudster, and mentally unstable individual. These portrayals were not grounded in fact and bore no resemblance to Plaintiff's true character or conduct.

55. Defendant's statements were widely publicized. They were broadcast to thousands of viewers across Facebook, YouTube, TikTok, and other online platforms, and they were repeated in public meetings and circulated through written communications. Defendant encouraged others to share and amplify these statements, ensuring that the false portrayal reached a broad audience.

56. The false light in which Defendant placed Plaintiff would be highly offensive to a reasonable person. Defendant's statements suggested that Plaintiff was dangerous, immoral, mentally unstable, and unfit for community involvement. These portrayals were designed to provoke fear, hostility, and public condemnation, and they succeeded in causing members of the community to question Plaintiff's integrity and safety.

57. Defendant acted with actual malice. He knew the statements he published were false, or he acted with reckless disregard for their truth or falsity. Defendant fabricated allegations, ignored contradictory information, and continued to republish defamatory content even after being informed that his statements were untrue. His conduct was intentional, malicious, and aimed at causing maximum reputational and emotional harm.

58. As a direct and proximate result of Defendant's actions, Plaintiff suffered humiliation, emotional distress, reputational injury, and loss of community and professional opportunities. Defendant's false portrayals continue to circulate online, and Plaintiff continues to suffer harm as Defendant persists in publishing and republishing false statements.

59. Defendant's decision to circulate Plaintiff's photographs while labeling him "mentally disturbed," a danger to vulnerable community members, and a participant in criminal or predatory behavior placed Plaintiff in a highly offensive false light. Defendant's use of

11

religiously-coded threats, such as claiming God was "orchestrating [Plaintiff's] destruction," further contributed to a distorted and humiliating portrayal designed to provoke public hostility and fear.

60.     Defendant's false portrayals were widely disseminated and crafted to create a distorted and highly offensive impression of Plaintiff's character, morality, and mental stability. Defendant's use of Plaintiff's photographs, combined with fabricated allegations of criminality and predatory behavior, placed Plaintiff before the public in a false and humiliating light.

61.     Plaintiff is entitled to compensatory damages, damages for emotional distress, and punitive damages due to Defendant's malicious and reckless conduct.

**COUNT III**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

62.     Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

63.     Defendant engaged in a sustained and escalating campaign of harassment, defamation, and public attacks directed at Plaintiff. Defendant's conduct went far beyond mere criticism or disagreement. It involved fabricating allegations of criminal conduct, sexual misconduct, mental instability, and dangerous behavior, and broadcasting those allegations to thousands of viewers across multiple platforms.

64.     Defendant's actions were extreme and outrageous. He repeatedly accused Plaintiff of murder, terrorism, predatory behavior, and other acts of moral turpitude, despite having no factual basis for any such claims. He portrayed Plaintiff as mentally unstable and dangerous, asserted that Plaintiff had attempted suicide for attention, and encouraged others to fear, avoid, and retaliate against Plaintiff.

65.     Defendant's conduct was intentional. He openly stated his desire to "shut [Plaintiff] down," "ban him," and pursue criminal charges against him. Defendant encouraged others to file

12

complaints, seek protective orders, and contact government agencies to interfere with Plaintiff's life and work. These actions were designed to cause Plaintiff emotional harm, reputational damage, and public humiliation.

66. Even if Defendant did not intend to cause emotional harm, he acted with reckless disregard for the near certainty that his conduct would inflict severe emotional distress. Defendant knew that his statements were false or acted with reckless disregard for their truth, and he continued to publish and republish them despite knowing the harm they were causing.

67. As a direct and proximate result of Defendant's conduct, Plaintiff suffered severe emotional distress. Plaintiff experienced humiliation, anxiety, fear, and significant disruption to his personal and professional life. Defendant's statements caused members of the public to question Plaintiff's integrity and safety, leading to social isolation, loss of opportunities, and ongoing emotional harm.

68. Defendant's conduct was continuous and remains ongoing. Plaintiff continues to experience emotional distress as Defendant persists in publishing new false statements and republishing prior defamatory content. The cumulative effect of Defendant's actions has caused Plaintiff to have substantial and lasting emotional injury.

69. Defendant's conduct was further extreme and outrageous in that he displayed firearms in posts directed at Plaintiff, wrote that "next time won't be the next time," and highlighted comments urging others to "keep him tied up in court." Defendant's public mockery of Plaintiff's legal representation, repeated insults, and incitement of third-party harassment were calculated to intimidate Plaintiff, interfere with his legal rights, and cause severe emotional distress.

70. Plaintiff is entitled to compensatory damages for the emotional distress he has suffered, as well as punitive damages due to Defendant's malicious, intentional, and outrageous

conduct.

**COUNT IV**
**<u>HARASSMENT / STALKING (CIVIL)</u>**

71. Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

72. Defendant engaged in a persistent and escalating pattern of conduct directed specifically at Plaintiff. This conduct included repeated online attacks, public accusations, targeted broadcasts, and efforts to mobilize others against Plaintiff. Defendant's actions were not isolated incidents but part of a coordinated effort to intimidate, threaten, and harass Plaintiff over an extended period of time.

73. Defendant repeatedly monitored Plaintiff's activities, commented on his whereabouts, and responded to Plaintiff's public appearances with hostile broadcasts and posts. Defendant's conduct demonstrated an ongoing fixation on Plaintiff and a deliberate intent to insert himself into Plaintiff's personal and professional life in a harmful and disruptive manner.

74. Defendant's campaign included repeated communications, both direct and indirect, designed to alarm, intimidate, and emotionally distress Plaintiff. Defendant published false allegations of criminal conduct, sexual misconduct, and mental instability, and he encouraged others to fear Plaintiff, avoid him, or take action against him. Defendant's statements were crafted to provoke hostility and to isolate Plaintiff from his community.

75. Defendant also encouraged third parties to file complaints, seek protective orders, and contact government agencies about Plaintiff. He urged others to "shut [Plaintiff] down," "ban him," and pursue criminal charges, despite having no factual basis for any such claims. Defendant's efforts to mobilize others against Plaintiff amplified the harassment and increased the emotional harm Plaintiff experienced.

76. Defendant's conduct caused Plaintiff to experience fear, anxiety, and emotional

14

distress. Plaintiff reasonably believed that Defendant's actions could lead to further harassment, retaliation, or escalation by Defendant or by individuals influenced by Defendant's statements. Plaintiff was forced to alter aspects of his personal and professional life to avoid further confrontation and to protect his safety and well-being.

77.     Defendant's actions constitute harassment and stalking under applicable civil standards because they involved a course of conduct directed at Plaintiff that would cause a reasonable person to suffer emotional distress, fear for their safety, or fear for the safety of others. Defendant's conduct served no legitimate purpose and was undertaken solely to harm, intimidate, and disrupt Plaintiff's life.

78.     As a direct and proximate result of Defendant's actions, Plaintiff suffered emotional distress, reputational harm, and interference with his personal and professional activities. Defendant's conduct is ongoing, and Plaintiff continues to experience fear and anxiety as Defendant persists in publishing new false statements and encouraging others to act against him.

79.     Defendant escalated his harassment by featuring livestream comments encouraging viewers to "lay a complaint on him" and "keep him tied up in court," thereby endorsing and amplifying coordinated efforts to burden Plaintiff with legal entanglements. Defendant's posts displaying firearms and threatening that he would not exercise restraint in future encounters further contributed to a pattern of conduct that would cause a reasonable person to fear for their safety and experience significant emotional distress.

80.     Plaintiff is entitled to compensatory damages, damages for emotional distress, punitive damages due to Defendant's malicious conduct, and injunctive relief prohibiting Defendant from continuing to harass, stalk, or target Plaintiff.

**COUNT V**
**TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

81.     Plaintiff hereby repeats all of the allegations and Exhibits contained in the

Complaint thus far above and incorporates same as if fully set forth at length herein.

82.    Plaintiff has long-standing and ongoing professional and community relationships that depend on his reputation, credibility, and ability to engage constructively with members of the public. Plaintiff regularly participates in community events, collaborates with civic organizations, and engages in advocacy work that relies on the trust and support of community partners, donors, volunteers, and public officials.

83.    Defendant was aware of Plaintiff's community involvement and professional activities. Defendant monitored Plaintiff's public appearances, commented on his work, and repeatedly referenced Plaintiff's community engagements in his broadcasts and posts. Defendant knew that Plaintiff's ability to maintain these relationships was essential to his professional and civic endeavors.

84.    Despite this knowledge, Defendant intentionally engaged in conduct designed to interfere with Plaintiff's existing and prospective relationships. Defendant published false statements accusing Plaintiff of criminal conduct, sexual misconduct, mental instability, and other fabricated wrongdoing, knowing that such statements would undermine Plaintiff's credibility and damage his standing within the community.

85.    Defendant also encouraged others to take action against Plaintiff. He urged viewers to file complaints, seek protective orders, contact government agencies, and attempt to have Plaintiff banned from public meetings and community events. Defendant's statements were crafted to provoke fear, distrust, and hostility, and to discourage others from associating or collaborating with Plaintiff.

86.    Defendant's conduct was not justified by any legitimate purpose. His actions were motivated by malice, personal animosity, and a desire to harm Plaintiff's reputation and disrupt his professional and community activities. Defendant's campaign served no lawful or socially

16

valuable function and was undertaken solely to injure Plaintiff.

87.     As a direct and proximate result of Defendant's actions, Plaintiff's relationships with community partners, colleagues, and members of the public were damaged. Individuals who viewed Defendant's statements questioned Plaintiff's integrity, safety, and fitness for community involvement. Plaintiff lost opportunities for collaboration, participation in events, and engagement in community initiatives.

88.     Defendant's encouragement of others to file complaints, pursue protective orders, and "shut [Plaintiff] down," combined with his public dissemination of Plaintiff's alleged court dates and mockery of Plaintiff's legal representation, was intended to interfere with Plaintiff's professional relationships and legal rights. Defendant's amplification of comments urging viewers to "keep him tied up in court" demonstrates his deliberate effort to disrupt Plaintiff's ability to maintain community partnerships and pursue his work.

89.     Plaintiff suffered economic and reputational harm as a result of Defendant's interference. Defendant's ongoing conduct continues to threaten Plaintiff's ability to maintain and develop professional and community relationships, causing continuing and irreparable harm.

90.     Plaintiff is entitled to compensatory damages for the economic and reputational losses he has suffered, as well as punitive damages due to Defendant's malicious and intentional interference.

### PUNITIVE DAMAGES ALLEGATIONS

91.     Plaintiff hereby repeats all of the allegations and Exhibits contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

92.     Defendant's conduct was intentional, malicious, and undertaken with a conscious disregard for Plaintiff's rights and well-being. Defendant did not merely repeat rumors or make careless statements; he fabricated allegations, embellished falsehoods, and deliberately crafted

narratives designed to inflict maximum reputational and emotional harm.

93.     Defendant acted with actual malice. He knew that the statements he published about Plaintiff were false, or he acted with reckless disregard for their truth or falsity. Defendant ignored information contradicting his claims, refused to retract or correct his statements, and continued to republish defamatory content even after being informed that his allegations were untrue.

94.     Defendant's conduct was not isolated or impulsive. It was part of a sustained and escalating campaign to destroy Plaintiff's reputation, interfere with his professional and community relationships, and cause him emotional distress. Defendant repeatedly announced his intention to "shut [Plaintiff] down," "ban him," and pursue criminal charges, despite having no factual basis for any such claims.

95.     Defendant's actions were outrageous, willful, and wanton, demonstrating a level of hostility and disregard for Plaintiff's rights that exceeds all bounds of decency. Defendant weaponized social media platforms, public forums, and community networks to amplify his false statements and incite hostility against Plaintiff.

96.     Punitive damages are warranted to punish Defendant for his malicious conduct and to deter him and others from engaging in similar behavior in the future. Defendant's actions reflect a deliberate misuse of public platforms and community influence to inflict harm, and punitive damages are necessary to address the severity of his misconduct.

97.     Plaintiff therefore seeks an award of punitive damages in an amount sufficient to punish Defendant and to deter similar malicious conduct.

## PRAYER FOR RELIEF

98.     **WHEREFORE,** for the foregoing reasons and pursuant to the Counts above, Plaintiff JEDEDIAH BROWN respectfully demands judgment against Defendant AMIR A.H. SHAKUR, and seeks, in the alternative and cumulatively, general, compensatory, presumed, and

punitive damages, reasonable attorneys' fees and costs of suit, pre- and post-judgment interest as permitted by law, injunctive relief, and any further relief the Court deems equitable and just.

99.     Plaintiff further requests that the Court enter appropriate injunctive relief, including but not limited to:

    a.  an order prohibiting Defendant from publishing, republishing, or disseminating false or defamatory statements concerning Plaintiff;

    b.  an order requiring Defendant to remove or retract previously published defamatory content; and

    c.  an order prohibiting Defendant from harassing, stalking, or targeting Plaintiff through online platforms, public forums, or direct or indirect communications.

## JURY DEMAND

100.    Plaintiff demands a trial by jury on all issues so triable, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

## CERTIFICATION

101.    Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

*[Signature Block on Next Page]*

19

Respectfully Submitted,

**LLG NATIONAL LAW GROUP**

Dated: February 20, 2026

 _/s/ John Norkus_____
John Norkus, Esquire
180 N. Stetson Ave, 35th Floor
Chicago IL 60601
(T) 856.652.2000
(F) 856.375.1010
John.Norkus@LLGNational.com
*Attorney for Plaintiff*

20