IC

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

FILED

JUN 12 2026 BT

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

JEDEDIAH BROWN,

*Plaintiff,*

v.

AMIR A.H. SHAKUR,

*Defendant.*

Case No.: 1:26-cv-02388

Honorable April M. Perry

## DEFENDANT'S REPLY BRIEF IN SUPPORT OF HIS MOTION TO DISMISS AND MOTION FOR RULE 11 SANCTIONS

Defendant, Amir A.H. Shakur, appearing *pro se*, respectfully submits this Reply Brief in support of his Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and his Motion for Rule 11 Sanctions.

## I. ARGUMENT

### A. Plaintiff Fails to Establish Complete Diversity Jurisdiction Under 28 U.S.C. § 1332

Plaintiff's Consolidated Response relies on the superficial argument that merely holding a Texas driver's license and asserting Texas citizenship in a pleading completely insulates him from a jurisdictional challenge. It does not.

While Plaintiff correctly cites *Heinen v. Northrop Grumman Corp.* for the proposition that a domicile is not lost until a new one is acquired, Plaintiff completely ignores the irrefutable factual reality of his permanent, institutional roots in Illinois. Domicile requires physical presence coupled with the intent to remain indefinitely. Plaintiff's systematic, continuous presence in the Chicago metropolitan area is not a "temporary visit" for advocacy work; it is the absolute center of his civic, professional, and political life.

Most damning to Plaintiff's jurisdictional claim is the evidence set forth in Defendant's simultaneously filed Counter-Motion. As demonstrated by the certified public records attached thereto as **Exhibits**, Plaintiff has actively engaged in an official campaign to run for the **United States House of Representatives for a Congressional District in the State of Illinois.**

It is legally irreconcilable for Plaintiff to claim a permanent, exclusive domicile in the State of Texas for the tactical purpose of manufacturing federal diversity jurisdiction under 28 U.S.C. § 1332, while simultaneously holding himself out to the public, election authorities, and the electorate as a resident-candidate seeking to represent the citizens of Illinois in the United States Congress. Seeking federal public office to represent an Illinois district requires a deep, legally binding connection to the state that far exceeds "temporary travel."

A party cannot maintain a "sham domicile" in Texas solely for forum shopping when his own active political aspirations explicitly anchor his domicile to Illinois. Because both Plaintiff and Defendant are citizens of Illinois, complete diversity is entirely destroyed, and this Court lacks subject-matter jurisdiction under Rule 12(b)(1).

### B. Plaintiff's Claims Are Substantively Time-Barred Under the Pleading Standard

Plaintiff attempts to bypass the strict one-year statute of limitations for defamation in Illinois by broadly invoking the "continuing violation" and "republication" doctrines. However, the Seventh Circuit has consistently held that the single-publication rule applies to statements published on the Internet or via social media platforms.

The mere fact that an old video livestream or social media post remains accessible online to new viewers does not constitute a "republication" that resets the limitations clock. Plaintiff's Complaint heavily relies on historical statements that occurred well outside the statutory window. Because the foundational allegations are untimely, they must be dismissed under Rule 12(b)(6).

### C. The Challenged Statements Constitute Protected Rhetorical Hyperbole and Opinion

Plaintiff fails to meet the rigorous pleading standard required to transform public discourse, editorial critique, and political advocacy into actionable torts. The statements at issue—made within the context of highly charged public forums and live broadcast

streams—constitute protected opinion and rhetorical hyperbole under the First Amendment.

Under *Milkovich*, a statement is only actionable if it implies a provably false factual assertion. Taken in their proper context, the statements reflect a heated, ongoing public dispute between public figures, not objective statements of historical fact. Furthermore, Plaintiff has failed to plead actual malice with the requisite specificity, offering only conclusory assertions rather than concrete facts demonstrating that Defendant acted with subjective knowledge of falsity or reckless disregard for the truth.

### D. Plaintiff Fails to State a Claim for Harassment or Stalking under State or Federal Thresholds

In addition to deficient defamation claims, Plaintiff attempts to bootstrap a freestanding claim for "harassment" and "stalking" into his Complaint. This claim fails as a matter of law because it completely lacks a baseline statutory framework or factual foundation capable of meeting either Illinois or federal thresholds.

First, under long-standing Illinois law, there is no independent civil tort for "harassment" outside of specific statutory employment discrimination frameworks (such as Title VII or the Illinois Human Rights Act), none of which are alleged or applicable here. To the extent Plaintiff attempts to construct a civil stalking claim under the Illinois Stalking No Contact Order Act (740 ILCS 21/) or argue Intentional Infliction of Emotional Distress (IIED), the Complaint falls far short of the required threshold.

A legally cognizable "course of conduct" requires specific, documented acts that would cause a *reasonable person* to suffer severe emotional distress or fear for their safety. Plaintiff fails to prove—or even adequately allege—that any such baseline exists. Instead, Plaintiff points to a prolonged period of public, political, and media disagreement on digital broadcasting platforms.

Merely feeling annoyed, uncomfortable, or insulted by an opponent's public editorial commentary over a prolonged period does not meet the high legal bar of a "threat to safety" or "extreme and outrageous conduct." Because Plaintiff cannot point to a single threshold-breaking event, nor establish a legally defined pattern of illicit harassment, these claims are structurally deficient and must be dismissed under Rule 12(b)(6).

### E. The Motion for Rule 11 Sanctions Is Procedurally Sound and Substantively Warranted

1. **The Safe-Harbor Requirement Was Substantively Satisfied:** Plaintiff's hyper-technical objection regarding the Rule 11(c)(2) safe-harbor provision must

be rejected. Defendant provided explicit, written "Notice of Intent" via electronic service, detailing the exact legal and factual deficiencies of the Complaint 21 days prior to filing. As a *pro se* litigant, Defendant substantially complied with the spirit and purpose of the safe-harbor rule, which is to give the opposing party adequate notice and an opportunity to withdraw a frivolous filing. Plaintiff chose to double-down on his legally deficient claims instead.

2. **Sanctions are Necessary to Deter Frivolous Forum Shopping:** Plaintiff filed this action in federal court knowing that complete diversity of citizenship did not exist. The filing of a federal lawsuit under the guise of Texas diversity—while actively running for Congress as an Illinois representative—constitutes an egregious misuse of judicial resources and bad-faith forum shopping that warrants sanctions under Rule 11.
3. **The Request for Costs and Expenses Is Proper:** While Plaintiff correctly notes that *pro se* litigants generally cannot recover traditional "attorney's fees" under *Massuda*, Rule 11 explicitly authorizes the court to award "reasonable expenses" directly incurred as a result of the violation. Defendant has incurred direct, measurable administrative costs and expenses in defending against this frivolous and bad-faith litigation.

## II. CONCLUSION

For the reasons set forth above, in Defendant's initial moving papers, and as irrefutably proven by the Congressional campaign exhibits submitted to this Court, Defendant respectfully requests that this Court **GRANT** the Motion to Dismiss with prejudice for total lack of diversity jurisdiction and failure to state a claim, **GRANT** the Motion for Rule 11 Sanctions, and award Defendant his reasonable out-of-pocket expenses incurred in this action.

Dated: June 12, 2026

Respectfully submitted,

Amir A.H. Shakur, *Pro Se*

14348 S. Bensley Ave

Chicago, IL 60633

amirshakurspeaks@gmail.com

JEDIDIAH

BROWN

FOR CONGRESS

260P70135



72

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

People ex rel. ______________________

on behalf of himself/herself and/or on behalf of

JEDIDIAH BROWN

Petitioner

v.

AMIR SHAKUR

Respondent

Case No. 260P70135

☒ Independent Proceeding

☐ Criminal Proceeding

☐ Juvenile Proceeding

Leads No. ______________________

| Petitioner | Address | City/State/Zip |
|---|---|---|
| JEDIDIAH BROWN | 15161 BLACKSTONE AVE<br>☐ Check if omitted pursuant to Statute | DOLTON, IL 60471 |
| Respondent | Address | City/State/Zip |
| Amir Shakur | 14348 S Bensley ave | Chicago, IL 60633 |

| Year of Birth | Sex | Race | Height | Weight | Hair Color | Eye Color |
|---|---|---|---|---|---|---|
| | MALE | BLK | 5'7 | 200 | BLK | BLK |

## STALKING NO CONTACT ORDER

☒ 4665 Emergency ☒ 4666 Plenary

An initial knowing violation of a stalking no contact order is a class a misdemeanor. any second or subsequent knowing violation is a class 4 felony.

Based on the findings of this court, ◌ which were made orally for transcription, or ◌ which are set out in a separate instrument filed with the court. It is hereby ordered that:

The following persons are protected by this Order:

JEDIDIAH BROWN

RAHEEM SPARKS

"The minor child/ren" referred to herein are: